Wayne NAVE, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–88–1083.

Court of Criminal Appeals of Oklahoma.

April 8, 1991.

Thomas Purcell, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Tracy A. Land, Legal Intern, and Sandra D. Howard,

Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

LANE, Presiding Judge:

Wayne Nave, appellant, was tried by jury and convicted of the crime of Robbery With Firearm, After Former Conviction of Two or More Felonies (21 O.S.1981, § 801) in Oklahoma District Court, Case No. CRF–85–233. The jury set punishment at thirty (30) years imprisonment and the trial court sentenced accordingly. The appellant raises two propositions of error through appellate counsel and two propositions of error *pro se*. Both arguments raised by counsel concern out-of-court identification of the appellant. He argues the identifications should have been suppressed because the photographic-lineup was impermissibly suggestive due to the number of photographs it contained, and that the loss of the photographic line-up deprived him of due process. In his *pro se* supplemental brief the appellant argues the trial court erred in allowing him to represent himself at trial, and that the impaneling of a biased juror deprived him of a fair and impartial jury. We find the record created by the trial court is not sufficient to establish the waiver of counsel was knowing and intelligent, and we reverse and remand for a new trial.

On December 21, 1984, the appellant came into the Bestyet grocery store at 3106 North May in Oklahoma City and asked checker Delores Clark to cash a payroll check for him. She called manager Rudolf Redlinger. Redlinger determined the appellant did not have a check cashing card and advised him that without this card he could not cash the payroll check. The appellant then walked along with Redlinger, put his arm around Redlinger's shoulder, revealed a derringer in his waist band and told Redlinger to go to the office and fill his bag with cash. Clerk Zella Terronez saw the derringer and activated a silent alarm. The appellant left the office and stopped at a cashier stand to get more money from another clerk before leaving the store.

Eyewitness identification is the only evidence which connected the appellant with this crime. Both in-court and out of court identifications of the appellant were made. Redlinger made somewhat equivocal identifications both in and out of court. Clark gave a positive in-court and out of court identification. Terronez found the robber was not in the photo-lineup, and testified the appellant was not the man who robbed the Bestyet store.

The number of photos in the lineup is contradicted. Officer Kettler testified that he showed the witnesses six pictures. Clark remembered being shown three or four pictures. Redlinger remembered seeing four to eight photos. Kettler lost the photo-lineup and it was not produced at trial.

The appellant urges that the out-of-court identification should have been suppressed for three reasons: the photo-lineup was impermissibly suggestive because it consisted of so few photos; the witnesses involved in the robbery were under too much stress to remember the robber; and cross-racial identification, that is identification of a person of one race by a person of another race, is inherently unreliable.

■ The appellant's brief is well researched, and his arguments regarding the reliability of identifications are well documented. Accepting for the sake of argument the notion that stress and racial difference impair a person's ability to identify another person, we are not led to the conclusion that an identification made under one or both of these conditions is inherently unreliable *per se*.

The appellant does not guide us to any jurisdiction which has adopted this position, and we find none. Acceptance of the appellant's position would lead to the result that virtually all identifications by victims and those witnesses whose race differed from that of the perpetrator would be inadmissible at trial. This is not an acceptable result, nor a result indicated by research which reports lessened reliability under experimental conditions. No one experienced in the field of criminal law can be so naive as to believe an identification cannot be

tainted by human error. However, vigorous cross-examination can expose the weakness of those identifications made unreliable by fear, interracial ignorance, or any number of other relevant factors.

■ Appellant's argument that the out-of-court identifications should be suppressed because the photo-lineup was impermissibly suggestive due to the number of pictures shown to the witnesses is not persuasive. Based on testimony, that number could have been as small as three, or as large as eight. Impermissible suggestiveness occurs when there is a great likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). This likelihood must be determined by the facts of each case. *Id.*

We find no case, and the appellant refers us to none which states that three, four or five photos are *per se* impermissibly suggestive. Even accepting as true the testimony of Clark that the line-up contained as few as three photographs, this without more does not lead us to the conclusion that the photo-lineup is impermissibly suggestive. Uncontroverted testimony indicated the photos were all of Black men with medium colored complexions, approximately thirty years of age, with mustaches and beards. On these facts we do not find the extra-judicial identifications must be suppressed.

■ In a related argument the appellant asserts that the loss of the photo-lineup denied him due process. He claims the photo-lineup was so critical to the defense as to make the criminal trial fundamentally unfair without it. Having found that the photo-lineup was not impermissibly suggestive, it is not clear how the lineup was critical to his defense. The weight of the out-of-court identification is lessened somewhat by the fact that Clark made an unequivocal identification of the appellant in court. Although appellant argues this identification is tainted by her previous exposure to an impermissibly suggestive photo-lineup, he does not further challenge the reliability of the in-court identification.

■ This Court has held that even if the out-of-court identification is tainted, the in-court identification is admissible if certain indicia of reliability are present. *Weatherly v. State*, 733 P.2d 1331 (Okl.Cr.1987). Those factors to be considered when determining independent reliability are the prior opportunity of the witness to observe the defendant during the alleged criminal act; the degree of attention of the witness; the accuracy of the prior identification of the witness; the certainty of the witness; and the time between the crime and the confrontation. *Cole v. State*, 766 P.2d 358 (Okl.Cr.1988).

Clark had ample opportunity to observe the appellant immediately prior to the criminal act. She was not distracted during her observation, and she was accurate and certain of her identification during the photo-lineup. Approximately one week elapsed between the robbery and the identification of the appellant by Clark.

Even if the photo-lineup had been impermissibly suggestive, the independent indicia of reliability are sufficiently strong to permit admission of Clark's in-court identification. There is nothing, beyond the appellant's bald speculation to indicate Clark's in-court identification of the appellant was tainted by her out-of-court identification in the photographic-lineup. We find, therefore, that the loss of the photo-lineup does not, in this case, deny the appellant his rights of due process guaranteed by the state or federal constitutions. *See* Okl. Const. art. 2, § 7, U.S. Const. amend. 14.

■ The final two propositions of error are raised by the appellant *pro se*. We will address only the first proposition, for it requires reversal and remand for new trial, and it renders the second proposition regarding the empaneling of a juror moot. Appellant argues that the trial court erred in allowing him to proceed to trial *pro se* without determining a knowing and intelligent waiver of the right of counsel. The State counters with the argument that the appellant functioned well as his own counsel, filing numerous pre-trial motions, cross-examining witnesses, and presenting witnesses on his own behalf.

■ It is true that the appellant functioned adequately. However, this is not

the test of a valid waiver of the constitutional right to counsel. A person charged with a felony in a state court has the right waive counsel and represent himself. *Stevenson v. State*, 702 P.2d 371 (Okl.Cr.1985); *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). This waiver of counsel is valid only if it is done knowingly and voluntarily. *See Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), *Stevenson, supra.* A record of the knowing and voluntary waiver is mandatory, and absent a sufficient record, waiver will not be found. *Lineberry v. State*, 668 P.2d 1144 (Okl.Cr.1983).

This Court has held repeatedly that the record must show that the trial court advised the defendant of the dangers and disadvantages of self-representation in order to establish a record sufficient to support valid waiver of counsel. *See Stevenson v. State*, 702 P.2d 371 (Okl.Cr.1985); *Dunnum v. State*, 646 P.2d 613 (Okl.Cr. 1982); *Coleman v. State*, 617 P.2d 243 (Okl.Cr.1980); *Johnson v. State*, 556 P.2d 1285 (Okl.Cr.1976). We reiterate our clear statements that under both the state and federal constitutions anything less than a record which shows that the defendant rejected the offer of counsel with knowledge and understanding of the perils of self-representation is not waiver. *See* Okl. Const. art. 2, § 20, U.S. Const. amend. 6, *Lineberry* 668 P.2d at 1145; *Swanegan v. State*, 743 P.2d 131 (Okl.Cr.1987); *Mahorney v. City of Tulsa*, 542 P.2d 965 (Okl.Cr.1975).

Having found the waiver of counsel was not valid, we must REVERSE and REMAND this matter for new trial.

BRETT, PARKS and JOHNSON, JJ., concur.

LUMPKIN, V.P.J., concurs in part/dissents in part.

LUMPKIN, Vice Presiding Judge, concurring in part/dissenting in part.

I concur in the Court's determination that the eye witness identity evidence was properly admitted, however, I must respectfully dissent to the finding that Appellant did not knowingly and voluntarily waive his right to counsel.

The record, when viewed in its entirety, demonstrates that Appellant made a knowing, intelligent and voluntary waiver in this case. He initiated his request in a calculated and articulate fashion by filing a Motion to Proceed Pro Se and a Brief in Support of Motion to Proceed Pro Se. (O.R.14–16) After having the opportunity to review this pleading the Special Judge, prior to preliminary hearing, inquired of the Appellant to ensure the request set forth in the motion and brief was really his desire and election. Appellant was unequivocal in his request to proceed pro se and affirmed that self representation was his preference. (P.H.Tr.3–5) In accordance with the prior directions of this Court, the Special Judge granted Appellant's further request for stand-by counsel who was available to assist Appellant through the completion of the trial of the case. Appellant's capacity, knowledge and understanding is further evidenced by his subsequent filings of a Motion to Dismiss and Brief in support of the motion (O.R.17–21), Motion in Limine and Brief in support of the motion (O.R.22–25), Notice of Alibi (O.R.26–27), Motion to Vacate Order Striking Application for Late Appeal, Re-instate Application and Issue Writ of Habeas Corpus Ad Testificandum (O.R.80–82) and Motion for Appointment of Appellate Counsel (O.R.92–93). In fact, the Motion for Appointment of Appellate Counsel evidences Appellant's knowledge and understanding of the right to counsel and responsibilities of representation sufficient to defeat his argument.

When viewed in its totality, the record in this case supports a finding that the Appellant unequivocally, knowingly, voluntarily, and intelligently waived his right to counsel and requested to represent himself fully understanding the responsibility he was assuming. In addition, the record complies with the requirements set forth in *Swanegan v. State*, 743 P.2d 131, 132 (Okl.Cr. 1987), and *Coleman v. State*, 617 P.2d 243, 245–246 (Okl.Cr.1980). Whether there has been a valid waiver of right to counsel is to be determined from the total circumstances of the individual case including background, experience and conduct of the accused. *United States v. Warledo*, 557 F.2d

721 (10th Cir.1977). Further, where a defendant elects self-representation, he may not later be heard to complain that he was denied effective assistance of counsel. *Green v. State,* 759 P.2d 219, 221 (Okl.Cr. 1988), citing *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and *Johnson v. State,* 556 P.2d 1285, 1297 (Okl.Cr.1976). Appellant is now trying to get two bites at the apple after the first bite did not turn out as he had hoped it would. I cannot join in the Court's application of form over substance by disregarding the overwhelming evidence of the Appellant's valid waiver of counsel and determining that because "magic words" were not used the waiver cannot be accepted. Appellant's work product and self representation at trial reveal a sophisticated and knowledgeable defendant who is now attempting the manipulate the appellate process to his own advantage when the record reveals a conscious election to waive his right to counsel and represent himself. I must therefore respectfully dissent to the Court's decision to reverse and remand this case for retrial.